[No. B190202. Second Dist., Div. Five. May 10, 2007.]

In re JOSEPH M., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH M., Defendant and Appellant.

COUNSEL

Gerald Peters, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Keith H. Borjon and Yun K. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**TURNER, P. J.**—The minor, Joseph M., appeals from the November 18, 2005 wardship order (Welf. & Inst. Code, § 602) and his commitment to the Division of Juvenile Justice of the Department of Corrections and Rehabilitation. The juvenile court sustained the allegation of the June 28, 2004 delinquency petition, charging the minor with carjacking and found he personally used a firearm in the commission of the offense. (Pen. Code, §§ 215, subd. (a), 12022.53, subd. (b).) The juvenile court set the minor's maximum confinement time at 13 years. The minor argues the juvenile court abused its discretion in setting his maximum term of confinement. We affirm the wardship order.

We view the evidence in a light most favorable to the judgment. (*Jackson v. Virginia* (1979) 443 U.S. 307, 319 [61 L.Ed.2d 560, 99 S.Ct. 2781]; *People v. Elliot* (2005) 37 Cal.4th 453, 466 [35 Cal.Rptr.3d 759, 122 P.3d 968]; *Taylor v. Stainer* (9th Cir. 1994) 31 F.3d 907, 908–909; see also *In re Cheri T.* (1999) 70 Cal.App.4th 1400, 1404 [83 Cal.Rptr.2d 397]; *In re Babak S.* (1993) 18 Cal.App.4th 1077, 1088–1089 [22 Cal.Rptr.2d 893] [standard of proof is the same in juvenile proceedings as that required in adult criminal trials]; *In re Jose R.* (1982) 137 Cal.App.3d 269, 275 [186 Cal.Rptr. 898] [same].) At approximately 5:00 p.m. on June 23, 2004, David Flores was stopped at a traffic light in his automobile. The driver's side window was open. The minor approached Mr. Flores's car. The minor pointed a black nine-millimeter gun at Mr. Flores's face. The minor ordered Mr. Flores to move. Mr. Flores was instructed to turn over the keys to his car. Mr. Flores got out of the car and began walking. Thereafter, two African-American individuals followed Mr. Flores. The two individuals demanded and took Mr. Flores's wallet. Mr. Flores did not see what happened to his car. Mr. Flores reported the incidents to the police. Mr. Flores's car was found the following day.

Mr. Flores identified the minor from a photographic lineup as the armed car thief. Los Angeles Police Officer Patrick Fitzgerald interviewed the minor on June 25, 2004. After waiving his right to remain silent, the minor wrote out a statement, which read: "I was walking down Spring, and the keys was in the car ignition, so I hopped in and started driving it. And the police came in back of me, so I got scared and parked and got out. Then they got me."

The minor argues the juvenile court improperly concluded that it had no discretion to set his maximum confinement time any lower than the minimum sentence that might be imposed on an adult for the same offense. At the time of the disposition hearing, the juvenile court explained that several attempts to place the minor in structured programs, including out-of-state placements, were unsuccessful. As a result, the only logical alternative was to commit the minor to the Juvenile Justice Division. In setting the maximum confinement time, the juvenile court noted: "For the record, let me make this clear: the court is not granting the request made by [the minor] today that it impose a four-year maximum confinement time or commitment to [Juvenile Justice Division] on following grounds: the court does not feel that it has the authority, even under Welfare and Institutions Code section 731, to impose a confinement time in [Juvenile Justice Division] that is less than what can be imposed as a minimum sentence in this case. The committing offense in this case is carjacking plus using a firearm. Minimum—at minimum the court, it seems to me, must impose three years, which is the minimum for carjacking, plus ten years for the gun. The gun, which imposes ten years in addition to the carjacking time, cannot be reduced, cannot be concurrent, and cannot be stricken. Therefore, the ten years has to be added to whatever minimum that the court sets for the basic offense or the base offense, which is carjacking."

Defense counsel inquired, "Is the court also concluding that it lacks the authority to stay the enhancement?" The juvenile court responded: "Yes, because under [Penal Code, section 12022.53] subdivision (h) I cannot strike it. And I interpret that to be not giving me the authority to not impose it in any way that I cannot stay it. I cannot strike it. Subdivisions (b) and (h), taken together, I think requires the court to impose the ten years, and that would be in addition to whatever term the court finds appropriate for carjacking." Thereafter, the juvenile court ordered: "I will impose the maximum period of confinement to be 13 years in [Juvenile Justice Division], which I believe is the minimum that I can impose. Of course, everyone knows that [Juvenile Justice Division] cannot keep [the minor] in its facilities

beyond his 25th birthday, because that is what is permitted under the law." The juvenile court further noted that this was the minor's third sustained petition since 2002. The minor had been placed in a camp on three prior occasions.

In the case of *In re Eric J.* (1979) 25 Cal.3d 522, 536 [159 Cal.Rptr. 317, 601 P.2d 549], the California Supreme Court held: "Under [Welfare and Institutions Code] section 726, if the juvenile court chooses to 'sentence' consecutively on multiple counts or multiple petitions, the maximum term must be specified in accordance with the formula set forth in subdivision (a) of Penal Code section 1170.1, i.e., the sum of the 'principal term' (the longest term imposed for any of the offenses) and 'subordinate terms' (one-third of the middle term imposed for each other offense)." (Fn. omitted; see also Welf. & Inst. Code,[1] § 726, subd. (c);[2] *In re David H.* (2003) 106 Cal.App.4th 1131, 1133–1134 [131 Cal.Rptr.2d 330]; *In re Adrian R.* (2000) 85 Cal.App.4th 448, 454 [102 Cal.Rptr.2d 173]; *People v. Murray* (1994) 23 Cal.App.4th 1783, 1789 [29 Cal.Rptr.2d 42].) Section 731, subdivision (b) provides in pertinent part: "A minor *committed to the Department of Youth Authority* may not be held in physical confinement for a period of time in excess of the maximum period of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court. A minor committed to the Department of the Youth Authority also may not be held in physical confinement for a period of

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] Section 726, subdivision (c), provides in relevant part: "If the minor is removed from the physical custody of his or her parent or guardian as the result of an order of wardship made pursuant to Section 602, the order shall specify that the minor may not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court. [¶] As used in this section and in Section 731, 'maximum term of imprisonment' means the longest of the three time periods set forth in paragraph (2) of subdivision (a) of Section 1170 of the Penal Code, but without the need to follow the provisions of subdivision (b) of Section 1170 of the Penal Code or to consider time for good behavior or participation pursuant to Sections 2930, 2931, and 2932 of the Penal Code, plus enhancements which must be proven if pled. [¶] If the court elects to aggregate the period of physical confinement on multiple counts or multiple petitions, including previously sustained petitions adjudging the minor a ward within Section 602, the 'maximum term of imprisonment' shall be the aggregate term of imprisonment specified in subdivision (a) of Section 1170.1 of the Penal Code, which includes any additional term imposed pursuant to Section 667, 667.5, 667.6, or 12022.1 of the Penal Code, and Section 11370.2 of the Health and Safety Code. [¶] . . . [¶] 'Physical confinement' means placement in a juvenile hall, ranch, camp, forestry camp or secure juvenile home pursuant to Section 730, or in any institution operated by the Youth Authority."

time in excess of the maximum term of physical confinement set by the court *based upon the facts and circumstances of the matter or matters* which brought or continued the minor under the jurisdiction of the juvenile court, which may not exceed the maximum period of adult confinement as determined pursuant to this section. . . ." (Italics added; see also *In re Jacob J.* (2005) 130 Cal.App.4th 429, 436 [30 Cal.Rptr.3d 255].)

The minor argues, "Section 731 unambiguously vests discretion in the juvenile court to determine the maximum term of confinement." In the case of *In re Carlos E.* (2005) 127 Cal.App.4th 1529, 1542 [26 Cal.Rptr.3d 551], our colleagues in the Court of Appeal for the Fifth Appellate District held: " '[T]he primary goal behind maintaining separate courts and procedures for adults and minors is to ensure that juvenile offenders who have not yet become hardened criminals receive treatment and rehabilitation. . . . [Citation.] . . . [T]he juvenile court system seeks not only to protect the public safety, but also the youthful offender. . . .' (*In re Kasaundra D.* (2004) 121 Cal.App.4th 533, 539 [16 Cal.Rptr.3d 920].) [¶] Under the changes to section 731, the juvenile court must determine the maximum period of confinement to [Juvenile Justice Division] based on the facts and circumstances, this maximum may not be more than that for a comparable adult, but may be less." (See also *In re Sean W.* (2005) 127 Cal.App.4th 1177, 1183 [26 Cal.Rptr.3d 248].)

The literal meaning of a statute must be in accord with its purpose as the Supreme Court noted in *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 658–659 [25 Cal.Rptr.2d 109, 863 P.2d 179] as follows: "We are not prohibited 'from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the [statute]. . . .' " In *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299], our Supreme Court added: "The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.] An interpretation that renders related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in the light of the statutory scheme [citation] . . . ." (See also *People v. Hammer* (2003) 30 Cal.4th 756, 762–763 [134 Cal.Rptr.2d 590, 69 P.3d 436]; *People v. Acosta* (2002) 29 Cal.4th 105, 112 [124 Cal.Rptr.2d 435, 52 P.3d 624].) The Supreme Court has held: " 'The courts must give statutes a reasonable construction which conforms to the apparent purpose and intention of the lawmakers.' (*Clean Air Constituency v. California State Air Resources Bd.* (1974) 11 Cal.3d 801, 813 [114 Cal.Rptr. 577, 523 P.2d

617].)" (*Webster v. Superior Court* (1988) 46 Cal.3d 338, 344 [250 Cal.Rptr. 268, 758 P.2d 596].) Further, the Supreme Court has held: "We have recognized that a wide variety of factors may illuminate the legislative design, ' "such as context, the object in view, the evils to be remedied, the history of the time and of legislation upon the same subject, public policy and contemporaneous construction." ' (*In re Marriage of Bouquet* [(1976)] 16 Cal.3d 583, 587 [128 Cal.Rptr. 427, 546 P.2d 1371], quoting *Alford* v. *Pierno* (1972) 27 Cal.App.3d 682, 688 [104 Cal.Rptr. 110].)" (*Walters v. Weed* (1988) 45 Cal.3d 1, 10 [246 Cal.Rptr. 5, 752 P.2d 443].) Ultimately, "[w]e must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." (*People v. Jenkins* (1995) 10 Cal.4th 234, 246 [40 Cal.Rptr.2d 903, 893 P.2d 1224].)

■ We agree with the Attorney General and the juvenile court in this case that the discretion to set the maximum confinement time at less than the lengthiest term an adult would serve for the same offense does not allow for the imposition of a term less than the minimum adult term. Section 731, subdivision (b) must be read in conjunction with section 726, subdivision (c) which specifically provides in relevant part: "*As used in this section and in Section 731*, 'maximum term of imprisonment' means the longest of the three time periods set forth in paragraph (2) of subdivision (a) of Section 1170 of the Penal Code, but without the need to follow the provisions of subdivision (b) of Section 1170 of the Penal Code or to consider time for good behavior or participation pursuant to Sections 2930, 2931, and 2932 of the Penal Code, *plus enhancements which must be proven if pled*." (Italics added.) In the case of *In re Jacob J., supra*, 130 Cal.App.4th at pages 436–437, the court reviewed the legislative history of Senate Bill No. 459 (2003–2004 Reg. Sess.), which amended section 731, subdivision (b): " 'This bill would authorize the court to additionally set maximum terms of physical confinement in the CYA based upon the facts and circumstances of the matter or matters which brought or continued the minor under the jurisdiction of the juvenile court. This new provision would provide for court consideration of factors about the offense and the offender's history which would be *comparable to those employed now for the triad sentencing of adults*, and have those considerations reflected in the CYA confinement term ordered by the court.' (Sen. Com. on Public Safety, Rep. on Sen. Bill No. 459 (2003–2004 Reg. Sess.) Mar. 13, 2003, pp. I–J.)" (Italics added; see also *In re Geneva C.* (2006) 141 Cal.App.4th 754, 759 [46 Cal.Rptr.3d 264].) The legislative intent is clear. ■ The amendment to section 731, subdivision (b), was intended

to afford the juvenile court the discretion to consider the facts and circumstances of the minor's case in setting a period of physical confinement that was less than the maximum adult term but within the sentencing triad described in Penal Code section 1170, subdivision (a)(3). Moreover, section 726, subdivision (c) can only be read to include the mandatory Penal Code section 12022.53, subdivision (b) enhancement. As a result, the juvenile court properly imposed 13 years' confinement time.

The wardship order is affirmed.

Armstrong, J., and Kriegler, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 25, 2007, S153663. Werdegar, J., did not participate therein.